JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No.: | 2:20-cv-01421-SB-PLA | Date: | 5/17/2021 |
|---|---|---|---|

| Title: | Linda Drake v. Toyota Motor Corp. et al |
|---|---|

| Present: The Honorable | STANLEY BLUMENFELD, JR., U.S. District Judge |
|---|---|

| Victor Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT (DKT. NO. 34)**

This case involves a putative class action based on an alleged steering defect in Toyota Highlanders. Plaintiffs Linda Drake and Mike Heslop bring various claims arising under California and Illinois law, respectively, on their own behalf and on behalf of classes of California and Illinois consumers. *See* Dkt. No. 32 (Compl.) ¶ 111. The Court previously issued an order dismissing all claims, some with prejudice and some without prejudice. *Drake v. Toyota Motor Corp.*, No. 2:20-CV-01421-SB-PLA, 2020 WL 7040125 (C.D. Cal. Nov. 23, 2020). The factual and procedural history and relevant legal standards are set forth in that order and will not be repeated here. Before the Court is Defendant Toyota Motor Sales USA, Inc.'s motion to dismiss the second amended complaint. Dkt. No. 34-1 (MTD); *see* Dkt. Nos. 38 (Opp.), 40 (Reply).

I. **PLAINTIFF DRAKE'S CLAIMS ARE TIME-BARRED UNDER CALIFORNIA LAW.**

Plaintiff Linda Drake is a California citizen, bringing claims for violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750; and unjust enrichment, on her behalf and the behalf of a putative class of California consumers. Compl. at 1, ¶¶ 14, 111.

As the Court previously noted, "there is no dispute that all Drake's claims have statutes of limitations ranging from three to four years." *Drake*, 2020 WL 7040125, at *5. The Court also explained that, because Drake purchased and received delivery of her vehicle 7 years and 10 months before the complaint, her "claims are time barred unless she can plausibly plead that a tolling or delayed accrual doctrine applies." *Id.* Drake argues that the "delayed discovery" rule renders her claims timely, but the Court dismissed her claims, reasoning "Drake was on inquiry notice after the third failed repair on December 5, 2015, when her repeated need for repairs and the Toyota dealer's admitted failure to diagnose her ongoing problem was enough for even an unsophisticated consumer to recognize that she should inquire whether her vehicle had a defect." *Id.* at *7. The Court allowed leave to amend, instructing that "[i]f Plaintiffs file an amended complaint, they must allege facts demonstrating why, despite reasonable investigative efforts, Drake could not discover her vehicle's defect until July 3, 2017"—the date Toyota diagnosed the defect in her vehicle. *Id.*

Plaintiffs now argue that the operative complaint's "allegations satisfy this Court's requirement." Opp. 4. In particular, the complaint states:

> Following her third repair attempt, Plaintiff exercised further reasonable diligence to discover if her vehicle suffered from a defect. While Plaintiff is currently unable to recall specific dates and times, Plaintiff Drake called [the authorized Toyota dealer] DCH Toyota multiple times between December 2015 and July 2017. Each time, she spoke with Toyota employees regarding the noises that persisted in her Class Vehicle. She recalls specifically speaking with Toyota employee Jose A. Hernandez. Every time Ms. Drake called DCH Toyota, she described the continuing problems with her vehicle, specifically, harsh noise when shifting gears. Each time, she was told by Toyota employees that there was nothing that Toyota could do, that her Class Vehicle had no issues, and any noises she was hearing were

>  the result of the internal components working with each other and was not the result of any problems or defects within her Class Vehicle. Based on these communications from Toyota, Plaintiff was under the impression and believed that there was nothing wrong with her vehicle, and that there was nothing further that Toyota was willing to do to address the issues she raised with respect to her vehicle. Further, based on Toyota's representations to her, Ms. Drake was dissuaded from undertaking further investigations to determine if the symptoms that her vehicle suffered from were the result of a defect or wrongdoing by Toyota, because those representations led her to believe that there was nothing wrong with her vehicle.

Compl. ¶ 28.

These new allegations fail to save Drake's claims from being time-barred. When a party is placed on inquiry notice, she has the "burden of pleading sufficient facts demonstrating that he undertook a reasonable investigation once on inquiry notice that another's wrongdoing could be the source of his vehicle's troubles." *Zimmerman v. Ford Motor Co.*, No. 5:18-CV-02149-JLS-SP, 2019 WL 6481695, at *5 (C.D. Cal. Sept. 20, 2019). "Once the plaintiff has a suspicion of wrongdoing, . . . . it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988).  As this Court previously explained:

> Drake points to July 3, 2017, when Toyota told her that "that her intermediate steering shaft required immediate attention and needed to be replaced." But the problems with Drake's Toyota Highlander started over two years earlier. Beginning in March 2015, Drake "noticed a harsh noise when shifting gears, and in some cases, her vehicle failing to shift entirely." This resulted in three separate trips to her local Toyota dealer for repairs, but none of the visits proved fruitful in fixing her Highlander's problems.

*Drake*, 2020 WL 7040125, at *6 (citations omitted). The Court concluded that "Drake's repeated need to take her Toyota Highlander to the dealer for similar shifting problems should have at least triggered a suspicion that the problems resulted from a defect." *Id*.

Having been placed on inquiry notice, Drake cannot be said to have made a "reasonable investigation" by continuing to make pointless calls to the dealer.

Drake acknowledges that these calls fit a familiar pattern: she called the Toyota dealer "describ[ing] the continuing problems with her vehicle, specifically, harsh noise when shifting gears"; and the dealer told her "that there was nothing that Toyota could do" and suggested that "any noises she was hearing were the result of the internal components working with each other and was not the result of any problems or defects." Compl. ¶ 28. But there was an obvious disconnect between Drake's experience and the dealer's response. Drake knew her vehicle was not operating normally because she experienced a persistent problem that was clearly identifiable—by sound (a "harsh noise when shifting gears") and by lack of function ("her vehicle failing to shift entirely"). Such an obvious, persistent problem renders implausible Drake's claim that she "believed that there was nothing wrong with her vehicle."[1]

The contradiction between what Drake knew and what she was being told required her to pursue other "avenues of inquiry." *Zimmerman*, 2019 WL 6481695, at *4. One obvious avenue was a "third-party inspection" by a qualified mechanic. *Id*. Though turning to third parties may not be a reasonable option where the defendant has exclusive knowledge of an otherwise undetectable defect, *id.*, that is not the case here. Moreover, the defect in this case is alleged to have been widespread, with "hundreds, if not thousands" of consumers affected. Compl. ¶ 105. Even a quick internet search could have revealed the defect. *Id.* ¶ 91 ("the Internet is replete with examples of blogs and other Websites where consumers have complained of the exact same Steering Shaft Defect within the Class Vehicles"). In 2010, one consumer complained: "My dealer initially replaced the intermediate steering shaft after I noticed many people on the Toyota Forums reporting the same problem." *Id*. ¶ 96.

In short, this is not a case in which a consumer called the dealer about a problem that disappeared. The problem persisted, and Drake persisted in calling the dealer—who allegedly said that there was nothing wrong. Yet Drake knew there was something wrong. She knew what she was being told did not square with the facts. The "reasonable investigation" requirement is not satisfied by pursuing a plainly futile course of action—at least not when other avenues of pursuit are readily and obviously available. Because Drake "has not plausibly alleged reasonable diligence, [she] is not entitled to invoke the discovery rule." *Yetter v. Ford Motor Co.*, No. 19-CV-00877-LHK, 2019 WL 3254249, at *7 (N.D. Cal.

---

[1] In any event, a party is on inquiry notice when she "had reason to suspect that a product had caused [her] injury." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 813 (2005).

July 19, 2019). Drake's claims are therefore time-barred and dismissed with prejudice. Given the previous opportunity to replead Drake's reasonable diligence, leave to amend is not warranted. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating factors to be considered in exercising discretion); *see also Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (stating that "when a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad'"); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (noting that a failure to cure identified pleading deficiencies is "a strong indication that the plaintiffs have no additional facts to plead").

## II. PLAINTIFF HESLOP FAILS TO ADEQUATELY PLEAD THE ILLINOIS FRAUD CLAIMS

Plaintiff Mike Heslop is an Illinois citizen, bringing claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1, et seq.; violations of the Illinois Uniform Deceptive Trade Practices Act (UDTPA), 815 ILCS 510/1, et seq.; fraudulent concealment, and unjust enrichment, on behalf of himself and a putative class of Illinois consumers. Compl. at 1, ¶¶ 34, 111. The fraud claims turn on the theory that Toyota failed to disclose and actively concealed the alleged defect in the class of vehicles. *Id.* ¶¶ 156, 181, 189. Toyota moves to dismiss these fraud-based claims, contending that (1) there are no misrepresentations or partial representations pleaded with sufficient particularity to satisfy Federal Rule of Civil Procedure's heightened pleading requirements, and (2) there was no "duty to disclose" the alleged defects under Illinois law. MTD 11-16.

Plaintiffs respond that their "fraud claims are not premised on misrepresentations, but instead on Toyota's refusal to disclose, and active concealment of, the Steering Shaft Defect." Opp. 5. Yet both ICFA and UDTPA require some communication, either direct or indirect, from the defendant. *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (2009) ("[W]e have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission. If there has been no communication with the plaintiff, there have been no statements and no omissions."); *Guajardo v. Skechers USA, Inc.*, No. 4:19-cv-04104-SLD-JEH, 2020 WL 7038950, at *5 & n.7 (C.D. Ill. Nov. 30, 2020) (dismissing both ICFA and UDTPA claims for failure to allege a communication with a material omission); *Schwebe v. AGC Flat Glass N. Am., Inc.*, No. 12 C 9873, 2013 WL 2151551, at *2-3 (N.D. Ill. May 16, 2013) (same).

Plaintiffs claim that they "need not address this argument," but briefly state in a footnote that "Plaintiff Heslop has established that he communicated with Toyota through its advertisements and window stickers concerning the safety and reliability of the Class Vehicles, and spoke with Toyota sales representatives—none of which disclosed the Defect." Opp. 14 n.13. Indeed, the complaint states:

> Prior to purchasing his Class Vehicle, Plaintiff Heslop test drove the vehicle, viewed advertisements for the Class Vehicle, reviewed the Class Vehicle's window sticker, and spoke with Toyota sales representatives concerning the Class Vehicle's features, including standard safety features. Neither the test drive, the advertisements, the window sticker, nor the sales representatives disclosed or revealed that the intermediate steering shaft was defective and susceptible to breaking down, and unable to withstand the wear and tear of operating an automobile under normal conditions.

Compl. ¶ 36. The question thus is whether these communications—general advertisements, a window sticker, and conversations with sales representatives—are pleaded with particularity sufficient to state ICFA and UDTPA claims.

To start, Federal Rule of Civil Procedure 9(b) instructs that "a party must state with particularity the circumstances constituting fraud or mistake." Though this requirement is relaxed in the context of fraud-by-omission, plaintiff still must articulate the "who, what, when, and how" of the fraud. *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 969 (N.D. Cal. 2018). Here, the "who" element of the communications is absent, as it is unclear whether the advertisements, window sticker, and sales representatives came from Toyota (the defendant here) or Continental Toyota (the authorized dealer from which Heslop purchased the vehicle). *See* Compl. ¶ 36.

Though Plaintiffs argue communications from "an authorized dealership" are "sufficient to establish the necessary communications with the manufacturer to sustain an omission claim," Opp. 14 n.13, the Supreme Court of Illinois has instructed otherwise. In *Connick v. Suzuki Motor Co.*, the court rejected a similar argument that "plaintiffs' allegations that statements made by salesmen at local Suzuki dealers constituted fraud by Suzuki." 174 Ill. 2d 482, 497 (1996). *Connick* reasoned that "the statements were not made by Suzuki but by Suzuki dealers and therefore cannot be the basis of a common law fraud count against Suzuki unless plaintiffs have adequately alleged that the dealers were the agents of Suzuki." *Id.* at 497-98. It was not enough that the complaint generally alleged that the dealers

"were agents" of Suzuki. *Id.* at 498. Rather, the plaintiffs were required to allege "facts to support a finding that the local Suzuki dealers had actual or apparent authority to act on Suzuki's behalf." *Id.*[2] Here, too, there are no allegations of an agency relationship between Toyota and the local dealer such that the statements of the dealer and its employees can be attributed to Toyota. *Id.* Though Toyota raised this issue in its motion, MTD 10-12, Plaintiffs offer no response.

But even assuming the advertisements and window sticker can be attributed to Toyota, they still would not suffice to state a claim as pleaded. In the ICFA context, "generalized allegations" of the defendant "advertising its goods" have not satisfied Rule 9(b)'s requirements. *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 718 (N.D. Ill. 2020); *see Guajardo v. Skechers USA, Inc.*, No. 4:19-cv-04104-SLD-JEH, 2020 WL 7038950, at *5 (C.D. Ill. Nov. 30, 2020) (concluding that the complaint had "not alleged any direct statements that contain material omissions" for purposes of an ICFA claim despite an allegation that a shoe company failed to disclose information about a manufacturing defect in its "advertising, on [its] shoeboxes and hangtags, and on their product"). Once again, *Connick* is instructive in its treatment of two different representations. *Connick* held that Suzuki's representations in Car & Driver magazine constituted communications sufficient to state a claim under ICFA. 174 Ill. 2d at 503. But these were specific, false statements made in an article reviewing vehicle safety that "Suzuki engineers built extensive passenger protection" to guard against a rollover accident. *Id.* In contrast, *Connick* rejected that Suzuki's statements in the owner's manual "contained a representation violative of [ICFA]" because the complaint failed to "allege with specificity how the manual's guidelines were false or deceptive." *Id.* at 502. In the same way here, general allegations of the mere existence of advertisements or a window sticker fall short of stating a claim for ICFA or UDTPA under the heightened requirements of Rule 9(b).

Thus, the ICFA and UDTPA claims are subject to dismissal. Where a "plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." *Zucco*, 552 F.3d at 1007 (quotations omitted). Here, the Court already allowed leave to amend after dismissing these (and other) claims for failure to plead with particularity. *Drake*, 2020 WL 7040125, at *10-11. Specifically, the first amended complaint was dismissed for

---

[2] Though *Connick* dealt with pleading standards under state law, federal courts also "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation omitted).

attributing all the fraudulent conduct to the "generic collective entity 'Toyota,'" rather than attributing specific actions to the individual defendants. *Id.* Now with the second amended complaint, Plaintiffs again do not meaningfully identify what conduct can be attributed to the sole remaining defendant. Indeed, Plaintiffs again use the word "Toyota" ambiguously throughout the complaint, referring unclearly to the activities of either the defendant or the dealerships. *See, e.g.*, Compl. ¶¶ 27, 36. Given Plaintiffs' repeated failure to plead these claims with particularity, the Court exercises its discretion to **DISMISS** the ICFA and UDTPA claims **WITH PREJUDICE**.

The complaint also fails to adequately allege a claim for fraudulent concealment under Illinois law. "In order to state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Connick*, 174 Ill. 2d at 500. But a "duty to disclose arises only in certain situations" under Illinois law. *Squires-Cannon v. Forest Pres. Dist. of Cook Cty.*, 897 F.3d 797, 805 (7th Cir. 2018). Those limited contexts include "where the 'plaintiff and defendant are in a fiduciary or confidential relationship' and 'where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff.'" *Id.* (citation omitted).

Plaintiffs explain that their allegations of "a duty to disclose rest on Toyota's pre-sale knowledge" of a defect that presented an "unreasonable safety hazard." Opp. 12 & 14 n.13. But the Supreme Court of Illinois in *Connick* rejected a similar claim, holding that Suzuki had no duty to disclose for purposes of a fraudulent concealment claim, despite an allegation that Suzuki possessed "knowledge of the [defective vehicle's] safety risks." 174 Ill. 2d at 500. The Supreme Court explained:

> Plaintiffs, in their complaint, failed to state a claim for common law fraudulent concealment because they failed to adequately allege that Suzuki had a duty to disclose its knowledge of the [vehicle's] safety risks. . . . Regarding the relationship between plaintiffs and Suzuki, the complaint merely alleged that plaintiffs had purchased a Samurai from an authorized Suzuki dealer, and that Suzuki manufactured and distributed the [vehicle]. Nowhere in the complaint did plaintiffs sufficiently allege that they were in a confidential or fiduciary relationship with Suzuki or that Suzuki was in a position of superiority over them. Without such allegations, plaintiffs' complaint did not allege a duty to disclose material facts which could give rise to

a claim for common law fraudulent concealment.

*Id.* at 500-01. Subsequent cases have similarly indicated knowledge alone does not give rise to a duty to disclose, absent some confidential or fiduciary relationship or position of superiority. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571-73 (7th Cir. 2012) (affirming dismissal of fraudulent concealment claim for lack of fiduciary or special trust relationship and explaining "asymmetric information alone does not show the degree of dominance needed to establish a special trust relationship"); *see also, e.g.*, *Van Zeeland v. Rand McNally*, No. 20-CV-00548, 2021 WL 1209155, at *10 (N.D. Ill. Mar. 31, 2021) (dismissing fraudulent concealment claim for "failure to adequately establish a special trust relationship and corresponding duty to disclose").[3]

Applying Illinois law here, the fraudulent concealment claim fails. Despite Plaintiffs' contention that there was a known safety risk, there is no allegation of a fiduciary or special trust relationship between Plaintiffs and Toyota. Thus, Plaintiffs "failed to adequately allege that [Toyota] had a duty to disclose its knowledge of the [vehicle's] safety risks." *See Connick*, 174 Ill. 2d at 500. Nor does it appear like Plaintiffs—who have disclaimed any need for a special trust relationship, Opp. 13 n.11—can cure this deficiency. Plaintiffs make no claim that Heslop or the putative Illinois class were in a fiduciary relationship with Toyota, and "state and federal courts in Illinois have rarely found a special trust relationship to exist in the absence of a more formal fiduciary one." *Wigod*, 673 F.3d at 571. Indeed, the "special relationship threshold is a high one," *id.*, and it is not enough that "plaintiffs had purchased a [vehicle] from an authorized [Toyota] dealer, and that [Toyota] manufactured and distributed the [vehicle]." *Connick*, 174 Ill. 2d at 501.[4]

---

[3] Plaintiffs cite two decisions from federal district courts outside of Illinois for the proposition that "a car manufacturer owes a duty to consumers under Illinois law to disclose 'safety defects.'" Opp. 13 n.11 (citing *In re General Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 414 (S.D.N.Y. June 30, 2017) and *In re Volkswagen Timing Chain Prods. Liab. Litig.*, No. 16-2765, 2017 WL 1902160, at *20 (D.N.J. May 8, 2017)). The allegations in this case, however, fall squarely within the rule set forth in *Connick*.

[4] Nor do Plaintiffs' allegations of active concealment create a duty to disclose. *See* Opp. 13-14. Under Illinois law, "when a seller affirmatively makes misleading statements about material facts or combines silence concerning material facts with active concealment, he may acquire a duty to speak." *Nazarowski v. Linnainmaa*,

Thus, Plaintiffs fail to state a claim for fraudulent concealment under Illinois law. The previous motion to dismiss sought dismissal on this ground, but the Court declined to resolve the question because Plaintiffs' "generalized references to 'Toyota' render[ed] that analysis impracticable." *Drake*, 2020 WL 7040125, at *11 n.5 (noting Plaintiffs' allegations made it unclear "*who* had a duty"). Still, the Court allowed leave, with the requirement that "[a]ny amended complaint must . . . properly allege a claim, which requires a duty to disclose." *Id.* at *13. Despite the issue's past briefing and the Court's express instruction, Plaintiffs have still failed to properly allege such a duty. And there is no indication that they could so. The Court concludes that further leave to amend would be futile, as every signal points to the conclusion that Plaintiffs have "made their best case" in their second amended complaint and still have "been found wanting." *Zucco*, 552 F.3d at 1007; *see also Chodos*, 292 F.3d at 1003 ("when a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad'").

Accordingly, the motion to dismiss is **GRANTED WITH PREJUDICE** as to the Illinois fraudulent concealment claim.

### III.   THE COMPLAINT'S EQUITABLE CLAIMS ARE DISMISSED.

Finally, the Court previously dismissed Plaintiffs' California UCL, California CLRA, Illinois UDTPA, and unjust enrichment claims because they are equitable in nature and the complaint was "devoid of substantive allegations showing Plaintiffs' legal claims would not provide them an adequate remedy." *Drake*, 2020 WL 7040125, at *13. The Court instructed that "[t]o proceed with their equitable claims and to pursue equitable relief, Plaintiffs must plead a lack of an adequate remedy at law." *Id.* at *14. Now, Toyota moves to dismiss the equitable claims with prejudice because Plaintiffs "have included the same

---

2019 IL App (1st) 181643-U, ¶ 18. Here, Plaintiffs contend that a duty to disclose arose because "Toyota actively concealed the Defect by routinely disputing its existence when Class Vehicles were brought into Toyota dealerships." Opp. 13 (citing Compl. ¶¶17-28, 36-42). Yet all the purportedly concealing conversations involved dealership employees; and, as discussed, Plaintiffs have not alleged that the statements of the dealer and its employees can be attributed to Toyota, despite the Court's previous guidance that Plaintiffs must "specify what impermissible acts" any defendant had "been accused of." *Drake*, 2020 WL 7040125, at *10.

equitable claims in the [operative complaint], but have added no facts that might change the result." MTD 25.

In *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), the Ninth Circuit affirmed the dismissal of claims for equitable restitution under California's UCL and CLRA because the plaintiff failed to allege that she lacked an adequate remedy at law. The Ninth Circuit instructed that "traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies," continue to apply when a party seeks equitable relief under state law in federal court. *Id.* at 843-44. Thus, where "the operative complaint" failed to allege lack of an adequate remedy, and the plaintiff "fail[ed] to explain" how the sum sought in equitable restitution was "inadequate or incomplete," the plaintiff failed to state a claim for equitable restitution. *Id.* at 844.

Plaintiff attempts to distinguish *Sonner*, noting this case is "at the pleading stage," implicates pleading in alternative, and involves injunctive relief. Opp. 20-23. It is unclear how any of those distinctions would permit this Court to eschew traditional equitable principles mandated by *Sonner*. A recent case in this circuit rejected those exact arguments as out of step with the weight of authority applying *Sonner*. *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 20-CV-03131-JSC, 2021 WL 1176645, at *7-8 (N.D. Cal. Mar. 29, 2021) (collecting cases and rejecting the arguments that "*Sonner* is distinguishable because it was decided at a different procedural posture," that *Sonner* "does not apply to their claim for injunctive relief," and that *Sonner* does not apply because plaintiffs are "permitted to plead alternative claims for relief").

At bottom, like *Sonner*, Plaintiffs fail to include any substantive allegations that they lack an adequate legal remedy—despite the Court's specific instruction to do so in the previous order. *Teresa Adams v. Cole Haan, LLC*, No. Sacv 20-913 JVS (DFMx), 2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020) (explaining the "clear rule in *Sonner*" is "that plaintiffs must plead the inadequacy of legal remedies before requesting equitable relief"). Moreover, like *Sonner*, Plaintiffs fail to persuasively explain how the legal remedies sought under Illinois are inadequate. Though Plaintiffs argue injunctive relief is necessary to prevent future harm, there is no reason to think legal remedies, like damages, will not be sufficient to make future plaintiffs whole. *Clark v. Am. Honda Motor Co.*, No. CV 20-03147 AB (MRWx), 2021 WL 1186338, at *8 (C.D. Cal. Mar. 25, 2021) ("Once those future purchasers purchase their vehicles, damages will be as adequate a remedy for them as it will be for currently-existing purchasers."). Likewise, it is unclear how damages would not be sufficient to render relief sought

by the unjust enrichment claim unnecessary; indeed, Plaintiffs appear to concede that the unjust enrichment claim "may be duplicative" of the other claims seeking legal remedies. Opp. 22.

Thus, the motion is **GRANTED** as to Plaintiffs' UDTPA claims and unjust enrichment claims and any other requests for injunctive relief under Illinois law.[5] Because the Court already allowed to leave to amend to cure this deficiency, and because it appears that any amendment would be futile, the Court **DISMISSES** these claims **WITH PREJUDICE**.

## V.   CONCLUSION

For these reasons, the motion to dismiss the second amended complaint is **GRANTED WITH PREJUDICE**.

---

[5] Aside from being time-barred, the California equitable claims fail in light of *Sonner*.